# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

DAVID LEE CURLE,

        Plaintiff,

v.

DAVID POWELL, et al.,

        Defendants.

No. CIV 06-336-RAW-SPS

FILED

MAR 14 2008

William B. Guthrie
Clerk, U.S. District Court
By_____
Deputy Clerk

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint, the defendants' motion, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff brings this action under the authority of 42 U.S.C. § 1983 seeking relief for alleged constitutional violations occurring during his incarceration at Jess Dunn Correctional Center in Taft, Oklahoma (JDCC). The defendants are David Powell, JDCC Unit Manager; Terry Alexander, JDCC Unit Counselor; Sergeant Day, JDCC Corrections Officer; Dr. Hodges, JDCC Physician; and Valerie Stacy, R.N., JDCC nurse.[1]

Plaintiff, a former DOC inmate who was convicted of Possessing Child Pornography,

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

alleges he informed the defendants that he was being physically and psychologically harmed by other inmates at JDCC, but the defendants knowingly and willfully failed to protect him from prison bullies. He was afraid of being labeled a snitch, so when another inmate broke his nose in March 2005, plaintiff reported that he had fallen off his bunk. Defendant Stacy, the facility nurse, would not see him for treatment of the broken nose and told him he would have to complete a request for medical care to see the doctor.

Plaintiff also alleges that in April 2005 another inmate intentionally broke his index finger, threw coffee on him, and accused him of being a child molester. Again, plaintiff was afraid to report the attack, so he secretly tried to tell the facility physician how his injury had occurred. Concerned that other inmates would overhear their conversation, plaintiff told the doctor that he fell and hurt his finger. The doctor looked at plaintiff's finger and said it did not look broken and that it would heal. Plaintiff later completed a request for medical treatment, but the nurse told him that the doctor had determined the finger would heal on its own. The nurse also accused plaintiff of whining and said there were other inmates with bigger problems. The doctor later told plaintiff that there was no need to x-ray the finger, but plaintiff claims it was painful for about a week and now is permanently crooked.

On September 1, 2005, plaintiff asked the dorm manager if he could be moved to the "D" Unit, because the other inmates were disrespecting him. The dorm manager told plaintiff that the other inmates picked on him because they liked him, and they were only joking with him. Plaintiff, however, felt he was in a dangerous situation.

On or about September 13, 2005, a new inmate allegedly picked up plaintiff and cracked his ribs. Plaintiff felt he was being forced to remain at JDCC, because the Sex

2

Offender Treatment Program (SOTP) was available at that facility. He needed the SOTP course to be released on his suspended sentence, but the defendants failed to protect him from the other inmates.

On or around December 2005 plaintiff made several complaints to staff that Inmate Michael Shaw was harassing him, because plaintiff refused to give Inmate Shaw any of his hobby craft glue. Plaintiff secretly submitted a Request to Staff about Inmate Shaw, but the next day Shaw threw the request in plaintiff's face and said that plaintiff had better give him some glue. Inmate Shaw then shoved plaintiff's face into plaintiff's breakfast, and plaintiff reacted by throwing coffee on Shaw's coat. Plaintiff alleges this incident resulted in his receiving a SOTP program failure and a transfer to a private prison where he could not finish his SOTP. He, consequently, had to remain incarcerated for about six months longer. He claims that before he was sent to the private prison, the staff took the hobby crafts he had built, including a radio made from popsicle sticks and a covered wagon. The staff also allegedly took plaintiff's hobby craft supplies worth about $50.00, his legal and medical records, handwritten novels, and a handwritten autobiography. Because of his attention deficit disorder and his posttraumatic stress disorder, it will difficult for him to recreate the books he had written.

Plaintiff also alleges he is hypoclycemic, he has had a major stroke, and he has Hepatitis A, B, and C, but he was forced to work outside in hot weather. When he complained to Defendant Nurse Stacy, she allegedly told him to stop being such a crybaby, that he was in perfect condition, and he should go to work.

The defendants have filed a motion to dismiss or for summary judgment, alleging this

3

lawsuit must be dismissed for plaintiff's failure to exhaust the available administrative remedies, pursuant to 42 U.S.C. § 1997e(a). To exhaust administrative remedies pursuant to DOC's grievance procedures, an inmate must properly submit a grievance regarding each issue with the facility head and also file a proper appeal of the facility head's response to the administrative review authority. *See* Docket #28-2 at 12-13. When the complaint is of a sensitive nature or when there is substantial risk of personal injury, the inmate must use the Inmate/Offender Grievance Report Form with the word *emergency* written at the top of the grievance before submission. *See* Docket #28-2 at 14.

The record shows that plaintiff filed only one grievance while at JDCC. On December 15, 2005, he submitted a grievance reporting the loss of his medical paperwork, copies of requests to staff, three handwritten novels in envelopes, and *The Lavenders Books of Magic*. An investigation was conducted, and relief was denied by the facility head. Plaintiff did not file a proper grievance appeal to the DOC Director.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). The court finds plaintiff

has failed to exhaust his administrative remedies for any of his claims.

**ACCORDINGLY,** this action is, in all respects, DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies, pursuant to 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this  14th  day of March 2008.

*Ronald A. White*
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**